UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MARY L.,                                  )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )   Case No. 2:18-cv-186
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social                    )
Security Administration,                  )
                                          )
                    Defendant.            )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Mary L., on May 9, 2018.  For the following reasons, the

decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Mary L., filed an application for Disability Insurance Benefits on March 3,

2015, alleging a disability onset date of April 15, 2014.  (Tr. 15).  The Disability Determination

Bureau denied her application initially on May 5, 2015, and again upon reconsideration on June

9, 2015.  (Tr. 15).  Mary L. subsequently filed a timely request for a hearing on June 27, 2015.

(Tr. 15).  A video hearing was held on May 12, 2017, before Administrative Law Judge (ALJ)

Lana Johnson, and the ALJ issued an unfavorable decision on July 6, 2017.  (Tr. 15-22).

Vocational Expert (VE) Michelle Marie Peters-Pagella testified at the hearing by telephone.  (Tr.

15).  The Appeals Council denied review, making the ALJ's decision the final decision of the

Commissioner.  (Tr. 1-6).

Mary L. meets the insured status requirements of the Social Security Act through

December 31, 2019. (Tr. 17). At step one of the five-step sequential analysis for determining

whether an individual is disabled, the ALJ found that Mary L. had not engaged in substantial

gainful activity since April 15, 2014, the alleged onset date. (Tr. 17).

At step two, the ALJ determined that Mary L. had the following severe impairments:

fibromyalgia, obesity, and diabetes. (Tr. 17). The ALJ indicated that Mary L. had a history of

hyperlipidemia, hypothyroidism, and hypertension but that the impairments were well-controlled

with medication and therefore were not severe. (Tr. 17).

At step three, the ALJ concluded that Mary L. did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ considered Mary

L.'s impairments against the criteria set forth in listings 1.02, 1.04, and 9.00. (Tr. 18).

After consideration of the entire record, the ALJ then assessed Mary L.'s residual

functional capacity (RFC) as follows:

> The claimant has the residual functional capacity (RFC) to perform sedentary
> work as defined in 20 C.F.R. § 404.1567(a) except no climbing of ladders,
> ropes, or scaffolds; no more than occasional climbing of ramps and stairs,
> balancing, stooping, kneeling, crouching, or crawling; no more than
> occasional exposure to unprotected heights and dangerous heavy moving
> machinery; no more than frequent reaching overhead bilaterally; and no more
> than frequent handling and fingering bilaterally.

(Tr. 18). The ALJ explained that in considering Mary L.'s symptoms she followed a two-step

process. (Tr. 18). First, she determined whether there was an underlying determinable physical

or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic

technique that reasonably could be expected to produce Mary L.'s pain or other symptoms. (Tr.

18). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to

determine the extent to which they limited Mary L.'s functioning. (Tr. 18-19).

Mary L. indicated that she was unable to work because of her diabetes, fibromyalgia, hypothyroidism, and kidney disease. (Tr. 19). The ALJ noted that Mary L. was able to prepare her own meals, complete chores, drive a car, and go shopping. (Tr. 19). Mary L. testified that she had pain throughout her body. (Tr. 19). However, the ALJ found that the medical findings did not support her allegations of disabling symptoms and limitations. (Tr. 19). The ALJ indicated that the medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 20). However, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 20).

At step four, the ALJ found that Mary L. was able to perform her past relevant work as a unit manager. (Tr. 22). The ALJ determined that the work did not require the performance of work-related activities precluded by the RFC. (Tr. 22). The ALJ found that Mary L. had not been under a disability, as defined in the Social Security Act, from April 15, 2014 through the date of this decision, July 6, 2017. (Tr. 15-22).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to

support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206,

217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098. A court must affirm an ALJ's

decision if the ALJ supported her findings with substantial evidence and if there have been no

errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act. The claimant must show that she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." **42 U.S.C.**

**§ 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to

be followed when determining whether a claimant has met the burden of establishing disability.

**20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and

"doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not

disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the

claimant has a severe impairment or combination of impairments that "significantly

limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see*

***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the

combined effects of the claimant's impairments). Third, the ALJ determines whether that severe

impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404,**

**subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be

conclusively disabling.  However, if the impairment does not so limit the claimant's remaining

capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and

mental demands of her past work.  If, at this fourth step, the claimant can perform her past

relevant work, she will be found not disabled.  **20 C.F.R. § 404.1520(e)**.  However, if the

claimant shows that her impairment is so severe that she is unable to engage in her past relevant

work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light

of her age, education, job experience, and functional capacity to work, is capable of performing

other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R.**

**§ 404.1520(f);** *see **Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits

applicant's request, vocational expert's refusal to provide the private market-survey data

underlying her opinion regarding job availability, does not categorically preclude the expert's

testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Mary L. has requested that the court reverse the ALJ's decision and award benefits, or in

the alternative remand the matter for additional proceedings.  In her appeal, Mary L. has argued

that the ALJ erred:  (1) in weighing the treating opinion of Dr. Shane Bush, M.D.; (2) in making

the RFC determination; (3) in reviewing her past relevant work; and (4) in evaluating her

subjective symptoms.

Mary L. has argued that the ALJ's analysis of Dr. Bush's opinion was legally insufficient

and her decision to give his opinion little weight was not supported by substantial evidence.  A

treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the

nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence" in the record.  **20 C.F.R. § 404.1527(c)(2)**; *see **Bates v. Colvin***, 736 F.3d 1093, 1099

(7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496

F.3d 833, 842 (7th Cir. 2007). "[A] judge should give controlling weight to the treating

physician's opinion as long as it is supported by medical findings and consistent with substantial

evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing **20**

**C.F.R. § 404.1527(c)(2))**; *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)). The ALJ

must "minimally articulate her reasons for crediting or rejecting evidence of disability." *Clifford*

*v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076

(7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's

evidence is no longer entitled to controlling weight' and becomes just one more piece of

evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be

given when a physician's opinions are inconsistent with his treatment notes or are contradicted

by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496

F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is

inconsistent with the opinion of a consulting physician or when the treating physician's opinion

is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting

evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970-71 (7th Cir.

2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004).

If the ALJ decides that the treating physician's opinion should not be given controlling

weight, the ALJ is "required by regulation to consider certain factors in order to decide how

much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014).

These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the

treatment relationship and the frequency of examination; 2) the nature and extent of the treatment

relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

On October 6, 2016, Dr. Bush provided a Physical Medical Source Statement. (Tr. 402–06). Dr. Bush stated that Mary L. would be unable to tolerate positional seating or activities for prolonged periods. (Tr. 402). He further opined that Mary L. would be unable to function in a work environment for eight or more hours a day. (Tr. 402). He found that Mary L. suffered from depression and anxiety that negatively affected her physical condition. (Tr. 402). He indicated that Mary L. could sit for only fifteen to twenty minutes before needing to get up, could stand for only fifteen minutes at a time occasionally and with position changes, and could stand/walk for less than two hours a day and could sit for at least six hours a day. (Tr. 403). Dr. Bush also opined that Mary L. would need a job that permitted shifting positions at will and would need fifteen-minute unscheduled breaks every hour. (Tr. 403). Additionally, he indicated that Mary L. would be off task 25% of the day or more, but that she was capable of low stress work. (Tr. 405). Dr. Bush stated that Mary L. could frequently lift and carry less than ten pounds, occasionally lift and carry ten pounds, and rarely carry between twenty and fifty pounds, as well as occasionally twist and rarely bend, squat, or climb stairs. (Tr. 404–05). Dr. Bush finally concluded that Mary L. could use her hand or fingers only 6-33% of the time, could reach arms in front of her body only 34-66% of the time, and never could reach her arms overhead. (Tr. 405).

The ALJ gave Dr. Bush's opinion little weight, finding that Dr. Bush's restrictions were not consistent with his own treatment notes. (Tr. 20). Specifically, Dr. Bush stated that Mary L. never could reach overhead bilaterally, but the ALJ dismissed this stating that Mary L.'s visits only indicated pain in her left shoulder. (Tr. 21). Mary L. contends that the ALJ ignored other

medical evidence in finding that Dr. Bush's opinion was inconsistent with the medical record.

At her consultative exam in April of 2015, the examiner noted pain in her right shoulder, as well as noted reduced range of motion in both shoulders. (Tr. 353, 356). In September of 2016, Mary L. underwent a Functional Capacity Evaluation with physical therapist, Shauna Burns. Although Mary L. refused to lift to her shoulders, she further showed decreased strength and mobility in her shoulders. (Tr. 398). The Commissioner has argued that Mary L.'s refusal to lift her shoulders meant that the physical therapist could not determine Mary L.'s physical limitations, which did not support Dr. Bush's opinion. However, her refusal to lift her shoulders corroborates Dr. Bush's opinion that her shoulder pain inhibited her movement. Furthermore, Burns noted decreased shoulder strength and range of motion over all planes, but particularly with abduction (raising her arms in front of her). Burns also opined that Mary L. could not sustain any full time work and could perform only 2.5 hours of activity during the day. Mary L. testified that she had pain in both shoulders, an inability to reach overhead due to weakness, and that her pain limited her ability to dress herself. (Tr. 34, 42, 234).

Mary L. also has argued that the ALJ mischaracterized other evidence. The ALJ stated that her ability to travel to Disney World and the lack of emergency room visits was contrary to Dr. Bush's opinion that she would be off task for 25% of the workday. The ALJ, however, failed to build a logical bridge between these statements. The ALJ did not explain how an ability to travel to Disney World contradicted being off task for 25% of the day or more. The ALJ must give good reasons for declining to give a treating physician's opinion controlling weight. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Additionally, the ALJ failed to provide any correlation between emergency room visits and off-task behavior.

The ALJ ignored favorable evidence in dismissing Dr. Bush's opinion, which requires

remand.  *See* ***Scrogham v. Colvin,*** 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified

pieces of evidence in the record that supported her conclusion that [the plaintiff] was not

disabled, but she ignored related evidence that undermined her conclusion.  This 'sound-bite'

approach to record evaluation is an impermissible methodology for evaluating the evidence.");

***Denton v. Astrue,*** 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all

relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-

disability while ignoring evidence that points to a disability finding.").  Furthermore, the ALJ did

not support her conclusion with substantial evidence.  Accordingly, the ALJ's failure to properly

weigh Dr. Bush's opinion necessitates remand.

Next, Mary L. has argued that the ALJ erred in evaluating her subjective symptoms.  The

ALJ determined that the medically determinable impairments reasonably could be expected to

cause the alleged symptoms, but that Mary L.'s statements concerning the intensity, persistence,

and limiting effects of these symptoms were not entirely consistent with the medical evidence

and other evidence in the record.  (Tr. 20).  In assessing a claimant's substantive complaints, the

ALJ must "evaluate whether [those] statements are consistent with objective medical evidence

and the other evidence," and "explain" which symptoms were found to be consistent or

inconsistent with the evidence.  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8; *see

also* ***Zurawski v. Halter,*** 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to

"explain the inconsistencies" between a claimant's activities of daily living, his complaints of

pain, and the medical evidence).

The ALJ dismissed Mary L.'s subjective allegations of pain, stating that the objective

evidence failed to provide strong support for her allegations.  (Tr. 19).  Specifically, the ALJ

noted that Mary L.'s physical examination was unremarkable even when she reported symptoms

of fibromyalgia.  (Tr. 19).  However, the ALJ's reliance on the lack of objective evidence or diagnostic imaging to support fibromyalgia symptoms was a mistake.

Fibromyalgia is a chronic condition whose diagnosis is based on a patient's self-report of subjective symptoms. "[I]t is error to demand laboratory data to credit the symptoms of fibromyalgia – the crucial symptoms, pain and fatigue, won't appear on laboratory tests." ***Kennedy v. Lilly Extended Disability Plan,*** 856 F.3d 1136, 1139 (7th Cir. 2017) (citing ***Hawkins v. First Union Corp. Long-Term Disability Plan,*** 326 F.3d 914, 919 (7th Cir. 2003)). The Seventh Circuit has recognized, "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."  ***Gerstner v. Berryhill,*** 879 F.3d 257, 264 (7th Cir. 2018) (citing ***Vanprooyen v. Berryhill,*** 864 F.3d 567 (7th Cir. 2017)); *see* ***Sarchet v. Chater,*** 78 F.3d 305, 307 (7th Cir. 1996) ("[I]t is difficult to determine the severity of [fibromyalgia] because of the unavailability of objective clinical tests."); *see also* ***Vanprooyen,*** 864 F.3d at 572 ("An 'ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.'"  When analyzing claims of fibromyalgia, an ALJ should be aware that "its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia."); ***Sarchet v. Chater,*** 78 F.3d 305, 306–07 (7th Cir. 1996); *see also* ***Kurth v Astrue,*** 568 F. Supp. 2d 1020, 1032-33 (W.D. Wis. 2008) ("Subjective complaints in [a fibromyalgia case] are more important than in other cases because they are clinical indicators of the disease of fibromyalgia.").

The ALJ erred by dismissing Mary L.'s subjective symptoms simply because there was a lack of objective evidence or imaging demonstrating the existence or extent of Mary L.'s pain. Additionally, the ALJ found that Mary L.'s fibromyalgia was a severe impairment, so "it is puzzling how the ALJ could consider [Plaintiff's] subjective complaints associated with that

condition to be a basis for challenging her [subjective allegations of pain.]" ***Newton v. Colvin,*** 2014 WL 772659, at *11 (N.D. Ind. 2014). The Commissioner failed to address the argument that the ALJ improperly placed too much significance on the objective evidence given that Mary L. suffered from fibromyalgia.

The ALJ also discredited Mary L.'s subjective symptoms because she worked part-time, attended church twice a week, and traveled to Disney World for her son's graduation. (Tr. 20). However, the ALJ did not explain how those activities were inconsistent with her statements. An ALJ must explain the perceived inconsistencies. *See **Carradine v. Barnhart,*** 360 F.3d 751 (7th Cir. 2004); ***Zurawski v. Halter,*** 245 F.3d 881, 887 (7th Cir. 2001). Furthermore, the ALJ failed to confront evidence that did not support her decision. For example, Mary L. testified that she struggled while on vacation at Disney World. Also, her part-time work included five to ten hours a week, merely ringing up sales. On remand, the ALJ should evaluate Mary L.'s subjective complaints in the manner prescribed by SSR 16-3p, explaining any symptoms that the ALJ finds to be consistent or inconsistent with the record evidence.

Finally, Mary L. contends that the RFC and the ALJ's conclusion at step four that she still could perform her past relevant work were not supported by substantial evidence. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental

activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue,*** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).** Because the ALJ improperly discounted the opinions from her treating physician, Dr. Bush, and erred in discrediting her alleged symptoms the RFC was not supported by substantial evidence.

Mary L. has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 9th day of August, 2019.

> /s/ Andrew P. Rodovich
> United States Magistrate Judge